## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EDNA FRANCOIS,

        *Plaintiff,*                         **CASE NO.:**

v.

TRUGREEN LIMITED PARTNERSHIP,

        *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Edna Francois files this complaint against her former employer, TruGreen Limited Partnership for violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the and the Family and Medical Leave Act of 1993 ("**FMLA**"), 29 U.S.C. § 2601, and the Florida Civil Rights Act of 1992 as follows:[1]

## PARTIES

1.    Ms. Francois is a black woman who is a resident of St. Lucie County, Florida. She is a former employee of TruGreen. 29 U.S.C. § 2611(2)(A).

2.    TruGreen is the largest lawn care company in the United States. It is organized as a limited partnership under Tennessee law with its principal place of business in Shelby County, Tennessee.  TruGreen continuously does business in the

---

[1] Plaintiff Edna Francois is "**Ms. Francois**" or "**Plaintiff**." Defendant TruGreen Limited Partnership is "**TruGreen**" or "**Defendant**."

state of Florida, has more than 500 employees, and was Ms. Francois' employer. 29 U.S.C. § 2611(4)(A); Fla. Stat. § 760.02(6).

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under 42 U.S.C. § 1981 and the FMLA.

4.    The Court has supplemental jurisdiction over Plaintiff's state law claims because such claims are so closely related to her federally-based claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

5.    This Court has personal jurisdiction over TruGreen because it continuously conducts business within this District.

6.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because TruGreen is subject to personal jurisdiction in this District and because the acts complained of giving rise to the claims herein occurred in this District.

## GENERAL ALLEGATIONS

A. *Ms. Francois' TruGreen Tenure*

7.    Plaintiff joined TruGreen in February 2023 as a sales representative based at Defendant's office in Tampa, Florida.

8.    Plaintiff was an exemplary employee. She won an annual performance award that was based on objective metrics and was promoted to a trainer in early 2024.

9.    Plaintiff's managers were Todd Rasor ("**Mgr. Rasor**") and Bonnie Gonzales ("**Mgr. Gonzales**").

B. *Inappropriate Behavior Directed at Plaintiff; Plaintiff Reports, and is Retaliated Against*

10. Mgr. Rasor had a specific behavior, which he repeated many times over the course of Plaintiff's employment: When Plaintiff got up from her desk, Mgr. Rasor would invariably be watching her, manipulating his genitals. He would also do this while standing in front of Plaintiff's desk.

11. This behavior increased as time went on. It was not directed towards Plaintiff's non-black peers or supervisors.

12. Numerous other individuals, including members of Defendant's management, saw Mgr. Rasor's behavior towards Plaintiff.

13. For example, on numerous occasions Plaintiff was called into Mgr. Gonzales' office. Mgr. Rasor would join the meeting. Plaintiff would be seated. Standing, Mgr. Rasor would manipulate his genitals at Plaintiff's eye-level, as she was seated.

14. Plaintiff would try to get in and out of Mgr. Gonzales' office as quickly as possible to get away from Mgr. Rasor.

15. Other of Plaintiff's non-black superiors, such as Emma Strickland ("**Sup. Strickland**") were aware of Mgr. Rasor's sexually charged behavior directed towards Plaintiff. But they normalized and encouraged his conduct. Sup. Strickland, for example, told Plaintiff that she should refer to Mgr. Rasor as "Daddy Todd."

16. Mgr. Rasor also maintained a picture of Plaintiff in his office, which made Plaintiff deeply uncomfortable. He did not maintain similar pictures of non-black peers and supervisors in his office.

17.     On approximately April 20, 2024, Plaintiff called Defendant's Ethics hotline about Mgr. Rasor's behavior and Mgr. Gonzales' knowledge of same.

18.     Thus, this lawsuit involves a sexual harassment dispute. 9 U.S.C. § 401(4).

19.     Immediately after that call, Mgr. Gonzales, with the knowledge of Mgr. Rasor, began making Plaintiff's job more difficult.  These decisions directly impacted Plaintiff's commission.

20.     For example, the quality of leads Plaintiff was assigned decreased dramatically after she called the ethics hotline.

21.     Plaintiff never heard anything about her complaint from Defendant's HR department.

22.     Had Plaintiff been a male, none of this would have befallen her.

23.     And had a non-black employee reported the conduct alleged by Plaintiff, an investigation would have ensued. Instead, Plaintiff's well-founded allegations were ignored.

24.     Sup. Strickland told Plaintiff that she would qualify for work-from-home based on her sales performance and attendance.

25.     Plaintiff sought to take advantage of that program based on the unchecked behavior of Mgr. Rasor and Mgr. Gonzales.

26.     In mid-May 2024, Plaintiff was granted permission to work from home based on her performance.

4

27.   Before commencing her work from home, she was called into Mgr. Rasor's office, ostensibly to go over her sales stats and describe expectations from working from home.

28.   However, Mgr. Rasor gave her a thinly veiled warning:  That she should not be surprised if she randomly started getting customer service calls while she worked from home (i.e., calls that carried little to no opportunity for commission). The effect of this was to decrease her daily performance numbers which would trigger a requirement that she work in the office.

29.   Mgr. Rasor's threat came to fruition; when her work-from-home started, Plaintiff began to receive calls that were overwhelmingly customer service calls.

30.   Approximately two weeks later, Plaintiff attempted to log in to her remote workstation, but her remote desktop was disabled.

31.   She sent numerous emails trying to determine what was going on.

32.   Receiving no response, she went into the office to try to solve the issue.

33.   Plaintiff's supervisor was surprised to see her. Plaintiff explained the situation to her supervisor, who looked into it and realized that Mgr. Rasor had turned off Plaintiff's remote desktop.  Plaintiff's supervisor told her that Mgr. Rasor was not supposed to do this.

34.   Plaintiff again called the ethics hotline. And again, no corrective actions were taken about the way that Plaintiff had been singled out.

35.   Meanwhile, the discriminatory conduct started right back up: the looks, and the fondling of himself in her presence. As did the retaliatory conduct for reporting

management to HR, such as the unexpected or explained alterations to the quality of her calls.

C. *Plaintiff's Father's Health Deteriorates; Defendant's False Assurances of Leave in Order to Facilitate her Termination*

36.    In the spring of 2024 (i.e., contemporaneous with the above), Plaintiff's father suffered a stroke. She became her father's primary caregiver.

37.    Plaintiff was required to assist her father in several ways, including taking him to numerous doctor's appointments as well as assisting him in his daily life.

38.    After speaking to the ethics hotline, Plaintiff was told that she could work from home while her request for FMLA leave request was pending.

39.    At first, Plaintiff utilized all her leave of absence and PTO time.

40.    In the early fall of 2024, Plaintiff began expressing concern that she had not reached a definitive answer from Defendant as to whether the FMLA time would be approved.

41.    She spoke with Sup. Garza in late August 2024 about when she was to return to the office. He assured her that she was not to return until late October 2024.

42.    On September 11, 2024, Plaintiff reached out to Sup. Garza, explaining that she had been again locked out of her emails and ability to make calls via Defendant's Teams system.

43.    She also explained that that despite Sup. Strickland telling her to contact Mgr. Gonzales about the issue, Mgr. Gonzales was not responding to her.

44.    Sup. Garza again advised Plaintiff that everything was going as planned.

45.     On September 23, 2024, Plaintiff again advised Sup. Garza that her calls were not being returned from the FMLA resources and otherwise.

46.     Sup. Garza advised that he had recently had similar situation with another employee who had been on leave for nearly a year, and that Defendant had tried to "pressure" Sup. Garza to "term" that employee, but that Sup. Garza had not done so.

47.     October 21, 2024 – Sup. Garza again advised that if Plaintiff submitted her paperwork, she could stay. Otherwise, she would need to resign if she hoped to rejoin the company in the future.

48.     Plaintiff ensured that she had submitted all the paperwork (from her father's physician's office). And in reliance of Defendant's numerous representations (i.e., that she merely needed to submit the FMLA paperwork), Plaintiff remained on leave.

49.     As it turned out, Defendant denied Plaintiff's leave request.

50.     In November 2024, Plaintiff received a phone call from Sup. Garza and Mgr. Gonzales telling her that (a) her father's FMLA paperwork was denied and (b) because of taking off the days that she took under the impression that she would be granted FMLA-leave, she was terminated, effective immediately.

51.     This was done despite the fact that Plaintiff could have simply resigned her position and been eligible for rehire after her father's needs became less onerous. In other words, it was done to ensure that Plaintiff no longer could work at TruGreen in the future.

## COUNT I
## <u>VIOLATION OF 42 U.S.C. § 1981 (DISCRIMINATION)</u>

52.    Plaintiff repeats and realleges Paragraphs 1 through 51 as if fully set forth herein.

53.    The discriminatory conduct – including, without limitation, the failure to address (or even investigate) Plaintiff's concerns regarding management's misconduct, constitutes discrimination on the basis of race.

54.    Put differently: but for Plaintiff's race, Defendant would not have engaged in such conduct. Her complaints would have been taken seriously. It is not simply that Plaintiff was a woman, but a black woman, asserting valid complaints regarding the way she was being treated.

55.    By discriminating against Plaintiff on the basis of her race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

56.    Plaintiff suffered adverse employment action when Defendant interfered with her leave, failed to investigate or address her claims of workplace misconduct, and fired her.

57.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. Defendant's management countenanced or approved of the racial discrimination, as exhibited by Defendant's failure to discipline Mgr. Rasor or Mgr. Gonzales for their conduct.

58.     Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 1981 (RETALIATION)**

59.     Plaintiff repeats and realleges Paragraphs 1 through 51 as if fully set forth herein.

60.     Plaintiff reported the misconduct she endured to human resources and supervisors.

61.     Plaintiff's complaints constituted a protected activity.

62.     Shortly after Plaintiff reported her concerns, Defendant retaliated against Plaintiff by, at a minimum, interfering with her ability to work from home and intentionally decreasing the quality of her leads, and ostracizing her while she was in the workplace.

63.     But for Plaintiff's race, Defendant would not have engaged in these adverse employment actions. By retaliating against Plaintiff on the basis of her race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

64.     Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights. Defendant's management and human resource agents directly countenanced or approved of the retaliation against Plaintiff, as evinced by, among other things, the failure of anyone to correct Plaintiff's documented and/or

easily corroborated complaints or Mgr. Rasor and Mgr. Gonzales' responses to those complaints.

65.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

66.    Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

## COUNT III
## DISCRIMIMINATION IN VIOLATION OF FCRA (GENDER)

67.    Plaintiff repeats and realleges Paragraphs 1 through 51 as if fully set forth herein.

68.    Plaintiff is a woman. Her gender is a protected class under the FCRA.

69.    But for that status, Plaintiff would have been treated differently by Defendant.

70.    Defendant, though numerous of its management with decision-making authority over Plaintiff's employment, took adverse employment actions against Plaintiff on the basis of her gender when it interfered with her work after she objected to the sexual harassment of her superior.

71.    Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via managers, HR professionals, and otherwise) knowingly countenanced or approved of the discrimination against Plaintiff.

72.    As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

**COUNT IV**
**RETALIATION IN VIOLATION OF FCRA (GENDER)**

73.    Plaintiff repeats and realleges Paragraphs 1 through 51 as if fully set forth herein.

74.    Plaintiff is a woman. Her gender is a protected class under the FCRA.

75.    But for that status, Plaintiff would have been treated differently by Defendant.

76.    Plaintiff reported the sexual harassment of her manager, as well as the misconduct of her peers and other supervisors.

77.    Plaintiff's complaints and reporting constituted a protected activity.

78.    For engaging in this protected activity, Plaintiff was targeted by Defendant's agents with decision-making authority over Plaintiff's employment. She began receiving lower caliber leads, was ostracized in the workplace, and ordered to end her work-from-home agreement.

79.    This conduct constitutes an adverse employment activity against Plaintiff.

80.    Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via

managers, human resources professional, and otherwise) knowingly countenanced or approved of the retaliation against Plaintiff for engaging in protected activity.

81.     As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## COUNT V
## VIOLATION OF FMLA (INTERFERENCE)

82.     Plaintiff realleges and incorporates by reference paragraphs 1-51 as if fully set forth herein.

83.     Plaintiff worked for Defendant for more than 12 months prior to the date her leave was supposed to begin.

84.     Plaintiff worked more than 1,250 hours in the year leading up to the date her leave was supposed to begin.

85.     Plaintiff was eligible for and entitled to 12 weeks of paid leave in connection with caring for her father, i.e., an "FMLA-qualifying reason."

86.     Defendant repeatedly expressed to Plaintiff that she was eligible and entitled to same. Such conduct ratified Plaintiff's belief that she was eligible and entitled to the leave sought.

87.     Plaintiff gave Defendant proper notice of her need for leave.

88.     Defendant interfered with Plaintiff's rights when it terminated her immediately after the leave she had been promised began.  It did not do so in good faith.

89.     As a result of Defendant's conduct, Plaintiff is entitled to monetary damages in an amount to be determined at trial.

**COUNT VI**
**VIOLATION OF FMLA (RETALIATION)**

90.     Plaintiff realleges and incorporates by reference paragraphs 1-51 as if fully set forth herein.

91.     Plaintiff worked for Defendant for more than 12 months prior to the date her leave was supposed to begin.

92.     Plaintiff worked more than 1,250 hours in the year leading up to the date her leave was supposed to begin.

93.     Plaintiff was eligible for and entitled to 12 weeks of paid leave in connection with assisting her father, i.e., an "FMLA-qualifying reason."

94.     Defendant repeatedly expressed to Plaintiff that she was eligible and entitled to same. Such conduct ratified Plaintiff's belief that she was eligible and entitled to the leave sought.

95.     Plaintiff gave Defendant proper notice of her need for leave.

96.     Plaintiff's assertion of her right to take leave constituted protected activity within the meaning of the FMLA.

97.    In response to Plaintiff's assertion of her rights, Defendant, at the eleventh hour, retaliated against Plaintiff by taking the adverse employment action of unceremoniously terminating her. Defendant did not do so in good faith.

98.    As a result of Defendant's conduct, Plaintiff is entitled to monetary damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in her favor and award:

a.    Back and front pay resulting from TruGreen's retaliation in violation of 42 U.S.C. § 1981 to the fullest extent permitted by law;

b.    Compensatory damages resulting from TruGreen's retaliation in violation of 42 U.S.C. § 1981 to the fullest extent permitted by law;

c.    Punitive damages to punish TruGreen's conduct in violation of 42 U.S.C. § 1981 to the fullest extent permitted by law;

d.    Back and front pay resulting from TruGreen's retaliation in violation of the FCRA to the fullest extent permitted by law;

e.    Compensatory damages resulting from TruGreen's retaliation in violation of the FCRA to the fullest extent permitted by law;

f.    Punitive damages to punish TruGreen's conduct in violation of the FCRA to the fullest extent permitted by law;

g.    Back and front pay resulting from TruGreen's violations of the FMLA;

h.    Liquidated damages resulting from TruGreen's violations of the FMLA;

i.    Pre-judgment and post-judgment interest;

j.    An award of costs and reasonable attorneys' fees; and

k.    Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: January 13, 2026                    Respectfully submitted,

                                           By: */s/ Christopher S. Prater*
                                               Christopher S. Prater
                                               Florida Bar No.: 105488
                                               cprater@pollardllc.com
                                               **LEAD COUNSEL**

                                               Jonathan E. Pollard
                                               Florida Bar No.: 83613
                                               jpollard@pollardllc.com

                                               **Pollard PLLC**
                                               500 E. Broward Blvd., #950
                                               Fort Lauderdale, FL 33394
                                               Telephone: 954-332-2380
                                               Facsimile: 866-594-5731
                                               *Attorneys for Plaintiff Edna*
                                               *Francois*